UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN McCOY,

               Petitioner,

v.                                       CASE NO. 05-CV-71309-DT
                                       HONORABLE GEORGE CARAM STEEH

KURT JONES,

               Respondent.

_____/

## OPINION AND ORDER
## GRANTING AN EVIDENTIARY HEARING ON THREE SUBCLAIMS,
## DENYING HABEAS RELIEF ON ALL OTHER CLAIMS,
## APPOINTING COUNSEL, AND
## DENYING PETITIONER'S RENEWED MOTION FOR DISCOVERY

Petitioner Benjamin McCoy has filed a *pro se* application for the writ of habeas corpus, which challenges his state convictions for first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony (felony firearm). Petitioner asserts eleven grounds for relief, including several allegations of ineffective assistance of trial counsel.

Also pending before the Court is Petitioner's renewed motion for discovery. Among other things, Petitioner seeks a copy of the state court record filed by Respondent and the Detroit Police Department's log book. Petitioner believes the log book will support his claim that he exercised his constitutional rights to remain silent and to have an attorney present before he was interrogated by Investigator Barbara Simon.

The majority of Petitioner's claims lack merit, but portions of Petitioner's ineffectiveness claim cannot be resolved without an evidentiary hearing. Consequently, the

habeas petition will be denied in part, and an evidentiary hearing will be held on the unresolved

claims. Petitioner's renewed motion for discovery will be denied without prejudice.

## I. The Facts and Procedural History

The Michigan Court of Appeals summarized the facts as follows:

Defendant's convictions arise from a shooting incident outside a Detroit club, the Dance Factory, during the early morning hours of June 4, 2000, which resulted in the death of fifteen-year-old Martel Wilson and injuries to Hombre Foster. In his opening statement, defense counsel admitted that defendant, twenty-one years of age at the time of the offenses, shot the decedent, but indicated that he did so in self-defense.

At trial, Hombre Foster, the surviving victim, testified that he was upset with defendant, whom he personally did not know, because a few weeks before the shooting he was at the Dance Factory when defendant, without provocation, punched him. Defendant ran out of the club chased by Foster, Wilson, and Quentin Leapheart. Foster testified that on the night of the murder, he was again at the Dance Factory when he saw defendant. A short confrontation occurred, and defendant and his associates left the club. Thirty minutes later, Foster and Wilson went outside to meet Leapheart, who was driving them home. They got into Leapheart's car and waited for another friend. At this time, Foster saw defendant in a car which left and returned fifteen minutes later. One of defendant's friends approached Leapheart's car; he turned and went back toward defendant. Defendant then left his car, ran toward Foster and his friends and began shooting. Foster and Leapheart ran from the car: Leapheart escaped injury, Foster was struck by gunfire and Wilson was not so fortunate-he died as the result of five gunshot wounds.

Quentin Leapheart gave a similar account of the events on the night in question. He acknowledged that the decedent had a .25 caliber handgun in his jacket pocket, but left it in the car when he entered the Dance Factory. He testified that no one in his car fired a weapon at defendant.

Kenya Carter, a cousin of one of defendant's friends, testified that when she left the club on the night of the shooting, she saw defendant walk toward her in the direction of the victims' car, carrying a long black gun. After her cousin advised her to go back inside, Carter turned around and headed toward a building. According to Carter, defendant stated "You talking ____" to the individuals in the car before she heard gunshots. Carter did not see anyone else shooting or with a gun.

The subsequent police investigation turned up ten fired cartridges at the crime scene; nine were fired from defendant's rifle and the tenth casing was fired from a different weapon. A police officer testified that when he reported to the crime scene, he saw a toy pistol on the back seat of the victims' car. The officer did not see a .25 caliber handgun in the car.

A Detroit Police Department investigator testified that defendant gave a custodial statement to her on August 3, 2000. In his statement, which was admitted into evidence at trial, defendant stated that a few weeks before the shooting he "got into it with some guys" while at the Dance Factory. On the night of June 3, 2000, defendant went to the club with two friends. There he saw the young man who was involved in the previous altercation. Defendant went out the back door and waited in the parking lot. Defendant then saw the young man with whom he had previously fought standing with his friends next to a car. Defendant stated that he heard someone say, "He got a gun." Defendant then returned to his own car, retrieved a rifle and ran back to "where the guys were." Defendant started shooting at the car. After firing five shots, defendant heard gunfire and started shooting again before he ran back to his car and drove away. Defendant estimated that he fired a total of seven to nine shots. Defendant claimed that he fired at the young men because his friend said "He got a gun." Defendant "got mad" and returned to his car to get his rifle. According to defendant, "I started shooting at them because I didn't want them to start shooting at us."

*People v. McCoy*, No. 234042, 2003 WL 21995222, at *1-2 (Mich. Ct. App. Aug. 21, 2003).

Petitioner did not testify or present any witnesses in his defense. Defense counsel argued to the jury that the evidence did not support the charge of premeditated murder, that the witnesses were not credible, and that Petitioner acted in self defense.

On March 1, 2001, a Wayne County circuit court jury found Petitioner guilty, as charged, of one count of first-degree (premeditated) murder, MICH. COMP. LAWS § 750.316, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by life imprisonment without the possibility of parole for the murder conviction and two parolable life sentences for the assault convictions.

Petitioner moved for a new trial and an evidentiary hearing on his claim that trial counsel

was ineffective.  The trial court permitted Petitioner and his mother to testify at a hearing on the motion, but the court denied Petitioner's motion after concluding that trial counsel was not ineffective and that a full evidentiary hearing was not warranted.

A three-judge panel of the Michigan Court of Appeals reversed Petitioner's first-degree murder conviction on the ground that the trial court did not properly instruct the jury on the elements of first-degree murder.  The state court of appeals remanded the case for a new trial on the first-degree murder charge and for an evidentiary hearing on Petitioner's claim that his trial attorney failed to (1) investigate and advance the self-defense theory and (2) file a pretrial motion to suppress Petitioner's custodial statement.  The court of appeals also vacated Petitioner's sentences for assault with intent to commit murder and remanded for resentencing on those counts.

The prosecutor appealed the court of appeals decision.  He argued that (1) the trial court's jury instructions did not require reversal and (2) Petitioner was not entitled to have his case remanded to the trial court because he stated that he did not wish to testify at trial and he did not set forth any grounds for having an evidentiary hearing.  In lieu of granting leave to appeal, the Michigan Supreme Court reversed the judgment of the Court of Appeals and reinstated the circuit court's judgment.  The reasons given were:

> We are not persuaded that the jury instructions were erroneous and, in any event, any error, on review of all the evidence, was harmless beyond a reasonable doubt. *People v. Anderson,* 446 Mich. 392; 521 N.W.2d 538 (1994).  Defendant also has failed to meet his burden of proving that counsel's actions were ineffective and were not a matter of trial strategy.  *People v. LeBlanc,* 465 Mich. 575; 640 N.W.2d 246 (2002).

*People v. McCoy,* 469 Mich. 990; 672 N.W.2d 853, 854 (2004).[1]  In a motion for

reconsideration, Petitioner urged the state supreme court to affirm the court of appeals decision,

to grant the state's application for leave to appeal, and/or to clarify the scope of its order.  The

state supreme court denied reconsideration on April 30, 2004.[2]

Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 5, 2005.

The grounds for relief are:

I.      Petitioner Benjamin McCoy was denied his right to a fair and
        impartial jury by the trial court's cursory and inadequate voir dire
        and totally foreclosed defense counsel's participation in the voir
        dire during jury selection.

II.     A writ of habeas corpus should issue where the trial court's
        interference and imposed limits on the cross-examination of
        prosecution witnesses and his display of partiality violated
        Petitioner Benjamin McCoy's right to confrontation and a fair trial
        as guaranteed by both the federal and state constitutions.

III.    Petitioner is entitled to habeas corpus relief where the trial court
        clearly erred under the totality of the circumstances in finding the
        prosecution used due diligence in their efforts to produce endorsed
        res gestae witnesses Robert and Roberto Carter at trial and denied
        Petitioner McCoy of a fair trial.

IV.     A writ of habeas corpus should issue where the trial court deprived
        Petitioner's Benjamin McCoy of his right to a fair trial by a
        properly instructed jury where he failed to give the order of
        deliberation instruction and improperly reinstructed the jury on the
        element of premeditation required for first degree murder.

---

[1]  Then Chief Justice Maura D. Corrigan wrote a concurring opinion, and Justice Marilyn
Kelly wrote a dissenting opinion, which Justice Michael F. Cavanagh joined.  The dissenting
justices voted to deny the State's application for leave to appeal or to grant the application for a
fuller discussion on the jury instruction for first-degree murder.

[2]  Justice Marilyn Kelly voted to grant the motion for reconsideration.

V.      A writ of habeas corpus should issue where Petitioner Benjamin McCoy was denied a fair trial when the trial court refused to instruct on the cognate lesser included offense of manslaughter supported by the evidence.

VI.     A writ of habeas corpus should issue where there was insufficient evidence as a matter of law to establish Petitioner Benjamin McCoy's conviction for premeditated murder in the first degree as required by the due process clause.

VII.    Petitioner Benjamin McCoy was denied his right to effective assistance of counsel guaranteed him by the federal and state constitutions at trial and the trial court abused his discretion by denying him an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973), and a new trial. Therefore, an evidentiary hearing is required to establish his claim and a new trial.

    A.      Defense counsel's acquiescence in the court's inadequate and cursory voir dire denied Petitioner a fair and impartial jury and constitutes ineffective assistance of counsel.

    B.      Petitioner Benjamin McCoy was denied effective assistance of counsel where trial counsel failed to properly investigate and advance the defense of self defense.

    C.      Defense counsel denied Petitioner his right to a fair trial where he failed to effectively cross-examine Quentin Leapheart with his prior inconsistent statement.

    D.      Petitioner was denied effective assistance of counsel where counsel failed to file a pretrial motion to suppress an incriminating statement attributed to the Petitioner in violation of his right against self incrimination.

    E.      Defense counsel's advise and trial strategy deprived Petitioner McCoy of his right to testify and constitutes ineffective assistance of counsel.

VIII.   A manifest injustice occurred in this trial where critical res gestae

witnesses with favorable testimony failed to appear because of threats on their lives and defense counsel never addressed this issue to insure Petitioner Benjamin McCoy a fair trial in violation of his right to effective assistance of counsel. Petitioner is entitled to an evidentiary hearing and a new trial.

IX.  The cumulative effect of the foregoing errors denied Petitioner of a fair trial in violation of due process and requires reversal.

X.  Petitioner is entitled to be re-sentenced where the trial court departed from the statutory sentence and failed to comply with the statutory departure requirements and imposed disproportionate maximum sentences on the assault with intent to murder convictions.

XI.  Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitutions as trial counsel failed to request instructions on defense of others and self-defense against persons acting in concert and/or failing to object to the absence of these jury instructions. U.S. Const., AM VI; CONST 1963, ART 1, § 20.

## II. Standard of Review

A habeas petitioner is entitled to the writ of habeas corpus if the state court's adjudication

of the habeas claims on their merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's

majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. When no state court adjudicated the merits of a claim, the deferential standard of review mandated by 28 U.S.C. § 2254(d) does not apply, and habeas review of questions of law and mixed questions of law is *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

**III. Discussion**

**A. Trial Counsel**

The Court begins its discussion by addressing Petitioner's seventh, eighth, and eleventh claims, which allege ineffective assistance of trial attorney. Specifically, Petitioner alleges that his attorney (1) acquiesced in the trial court's inadequate and cursory *voir dire*, (2) failed to properly investigate and advance the defense of self defense, (3) failed to effectively cross-examine Quentin Leapheart with his prior inconsistent statement to the police, (4) failed to file a pretrial motion to suppress Petitioner's incriminating statement to the police, (5) interfered with Petitioner's right to testify, (6) did nothing to assist the prosecution in finding missing *res gestae* witnesses, and (7) failed to request certain jury instructions.

To prevail on his ineffectiveness claim, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

### 1.  During Voir Dire

Petitioner alleges that defense counsel's passive role during the selection of the jury constituted ineffective assistance.  The record, however, indicates that defense counsel was far from passive during *voir dire*.  He used eleven of his twelve peremptory strikes to eliminate potential jurors.

Although defense counsel did not object on the record to the trial court's procedure of asking all the questions, there was no reason to object.  The trial court explained the prosecutor's burden of proof and the defendant's right not to do anything, the presumption of innocence, and the fact that the charges were not evidence.  The trial court also inquired whether the jurors could decide the case based on the evidence, not draw any unfavorable inferences from the defendant's failure to testify, weigh the credibility of police officers the same as any other

witness, and find Petitioner not guilty if the prosecution did not prove its case. In addition, the court asked the jurors whether they or members of their families had been victims of an assaultive crime and whether they were related to anyone involved in law enforcement. (Tr. Feb. 28, 2001, at 17-30, 34-35.) The trial court's questions and instructions were adequate to screen prospective jurors for bias and prejudice. The Court therefore agrees with the Michigan Court of Appeals that defense counsel was not ineffective for acquiescing in the trial court's *voir dire* procedures.

### 2. Cross-Examination of Quentin Leapheart

Petitioner asserts that his attorney should have cross-examined Quentin Leapheart about inconsistencies between his trial testimony and his statement to the police. Petitioner has failed to demonstrate that Leapheart's trial testimony differed in any significant manner from his statement to the police. Furthermore, Leapheart was unable to identify Petitioner as the shooter, and defense counsel was able to discredit Leapheart's testimony to some extent by getting Leapheart to admit that he failed to tell the police about the presence of a gun in the complainants' car. Defense counsel's performance was not deficient, and any deficiency in his cross-examination of Leapheart did not prejudice Petitioner.

### 3. Failure to Produce Two Res Gestae Witnesses

Petitioner alleges next that defense counsel did nothing to assist the prosecution in producing Robert and Roberto Carter as witnesses. The record indicates that the police made a concerted effort to locate the Carter brothers, and that the brothers evaded service of a material witness detainer. As explained by the Michigan Court of Appeals:

> [T]he police officer in charge of this case testified [at a due diligence hearing during trial] that he went to the Carters' home ten times from January of 2001

10

until the trial began on February 28, 2001. The Carter twins were never at home, and their mother, Ora Parker, refused to tell the police officer where they were located, adamantly insisting that she did not want them to testify. As a result of the Carter twins' reluctance to testify, the prosecutor obtained a material witness detainer against each of them, entered each detainer into the LEIN system, and advised Mrs. Parker that her children were subject to arrest. Nevertheless, neither Carter twin was detained before trial.

The police obtained information that the Carter twins were working for a Horace Johnson, but were unsuccessful in locating Johnson or the twins. In addition, according to the record, neither Carter twin was incarcerated or hospitalized in the area, and neither one had obtained telephone, gas or electrical service, or benefits from the Social Security Administration or MESC before the trial.

The trial court specifically found that the Carter twins were hiding and avoiding service, that their immediate family was unwilling to cooperate in producing them, and that there were no other leads available to locate them.

*McCoy*, 2003 WL 21995222, at *4-5.

The court of appeals correctly observed that "[t]he failure to the two res gestae witnesses to appear in court was a consequence of their own actions in avoiding service, not those of defense counsel." The court of appeals concluded that there was no merit in Petitioner's ineffectiveness claim. This conclusion was not contrary to, or an unreasonable application of, *Strickland*.

### 4. Failure to Request a Jury Instruction

Petitioner alleges that his trial attorney should have requested jury instructions on defense of others and defense against persons acting in concert. In the alternative, alleges Petitioner, defense counsel should have objected to the absence of these instructions. The trial court gave a lengthy instruction on self defense (Tr. Mar. 1, 2001, at 156-58), which was adequate to support Petitioner's claim of self defense. There was no evidence to support a jury instruction on defense of others or defense against persons acting in concert. Consequently,

defense counsel was not ineffective for failing to request those jury instructions.

### 5. Failure to Investigate and Advance a Claim of Self Defense

Petitioner's remaining claims about defense counsel allege that Petitioner's attorney failed to investigate and advance a claim of self defense and discouraged Petitioner from testifying. Petitioner also alleges that his attorney should have moved to suppress his statement to the police on the ground that he was interrogated by investigator Barbara Simon after he informed another officer that he wanted an attorney and did not want to speak to the officer. Petitioner's renewed motion for discovery seeks production of a log book maintained by the Detroit Police Department to show that the police took Petitioner out of his cell more than once to interrogate him.

Petitioner attempted to develop these claims in an evidentiary hearing in state court, but the trial court refused to grant a full evidentiary hearing on the claims. The trial court opined that Petitioner and his relatives would "say anything" at a hearing and that their credibility would be "zero." Without even hearing from Petitioner's trial attorney, the trial court concluded that defense counsel's decisions were trial strategy and that counsel did not stop Petitioner from testifying.

The Michigan Court of Appeals was troubled by the fact that defense counsel failed to put Petitioner on the stand after advancing a self-defense theory in his opening statement. Petitioner and his mother testified at the hearing on Petitioner's motion for new trial that they understood defense counsel to say Petitioner would be convicted of manslaughter if he did not testify.

Petitioner also testified at the hearing that he asked to see a lawyer at the police station

and refused to speak with a male officer before Investigator Barbara Simon proceeded to interrogate him. Petitioner claimed that, when he explained these facts to his attorney, the attorney said it would be a waste of time to file a motion to suppress his statement.

The Michigan Court of Appeals concluded that an evidentiary hearing was warranted to determine whether Petitioner's attorney was ineffective for failing to investigate and advance the self defense claim and for failing to file a motion to suppress the custodial statement. Although the Michigan Supreme Court reversed the court of appeals decision before an evidentiary hearing could be held, the supreme court's only comment on the ineffectiveness issue was that Petitioner had "failed to meet his burden of proving that counsel's actions were ineffective and were not a matter of trial strategy."

A habeas petitioner generally is entitled to an evidentiary hearing in federal court if the petitioner is not at fault for failing to develop the facts in state court and his factual allegations, if true, would entitle the petitioner to habeas relief. 28 U.S.C. § 2254(e)(2); *Schriro v. Landrigan*, __ U.S. __, __, 127 S. Ct. 1933, 1940 (2007). Relevant facts are in dispute here, and the state court refused to hold a full and fair evidentiary hearing on issues that may entitle Petitioner to relief. Consequently, Petitioner is entitled to an evidentiary hearing in federal court. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).

The Court will hold an evidentiary hearing on Petitioner's claims that his trial attorney (1) did not investigate and pursue a claim of self defense, (2) interfered with Petitioner's right to testify, and (3) should have moved to suppress Petitioner's statement to the police. Pursuant to 18 U.S.C. § 3006A(a)(2)(B), the Court appoints the Federal Defender Office to represent

Petitioner at the evidentiary hearing. A separate order will issue scheduling a date for the evidentiary hearing.

### B. Voir Dire

The Court finds no merit in Petitioner's remaining claims. He alleges first that he was denied his right to a fair and impartial jury by the trial court's cursory and inadequate voir dire, which foreclosed participation by defense counsel. Petitioner asserts that the trial court's questions were not sufficient to uncover juror bias and hindered defense counsel's ability to make efficient use of peremptory challenges. Petitioner further alleges that the trial court's comment on the shortness of the anticipated trial diminished the seriousness of the case.

Respondent argues that this claim is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Federal habeas courts may not consider a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make a timely and specific objection at trial in order to preserve a claim for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner violated this rule by not objecting to the trial court's handling of *voir dire*. The Michigan Court of Appeals enforced the contemporaneous-objection rule by stating that Petitioner did not preserve his claim for appellate review. The court of appeals noted that defense counsel did not

object to the *voir dire* proceeding as conducted and that he expressed satisfaction with the empaneled jury after both parties exercised peremptory challenges.

The contemporaneous-objection rule was an adequate and independent state ground for denying relief because it was firmly established and regularly followed before Petitioner's trial. Therefore, in order for this Court to consider the substantive merits of Petitioner's claim, he must establish "cause and prejudice" or a "miscarriage of justice."

Petitioner alleges that his trial attorney was ineffective for failing to object to the trial court's *voir dire* procedures. Constitutionally ineffective assistance is "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, the Court has already determined that defense counsel was not ineffective for failing to object to the *voir dire* proceeding. Because defense counsel was not ineffective, Petitioner has not established "cause" for his procedural default. The Court need not determine whether Petitioner was prejudiced as a result of the alleged error because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

Petitioner may overcome his procedurally defaulted claim, even in the absence of "cause and prejudice," on a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the

light of . . . new evidence." *Schlup*, 513 U.S. at 327.

Petitioner has not submitted any new and credible evidence from which a reasonable juror could conclude that he was not guilty of the offenses for which he was convicted. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's first claim. Petitioner procedurally defaulted his claim and he has failed to show "cause and prejudice" or a miscarriage of justice.

**C. Limits on Cross Examination**

Petitioner alleges next that the trial court's interference with his cross-examination of prosecution witnesses and the court's display of partiality violated his right to confront witnesses and his right to a fair trial. The Michigan Court of Appeals stated that the trial court properly exercised its discretion to control defense counsel's cross-examination of Hombre Foster and Quentin Leapheart because defense counsel's questions were argumentative and repetitive. The court of appeals stated that the trial court's limitation on defense counsel's cross examination of Barbara Simon may not have been evenhanded, but any error was harmless because Petitioner's statement to the police was admitted in evidence.

A trial court does "not err in occasionally interrupting the proceedings to clarify the law or the facts, require precise questioning from defense counsel, or speed the trial along." *United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006). Nevertheless, the Confrontation Clause of the Sixth Amendment to the United States Constitution

> bestows upon the criminal defendant the right to confront the witnesses against him, and the opportunity to cross-examine such witnesses: "Indeed, [t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (alteration in the original) (internal quotation marks and citation omitted). That said, the criminal defendant's right to cross-examine witnesses is not

16

limitless:

> [T]rial judges retain wide latitude insofar as the Confrontation
> Clause is concerned to impose reasonable limits on such cross-
> examination based on concerns about, among other things,
> harassment, prejudice, confusion of the issues, the witness' safety,
> or interrogation that is repetitive or only marginally relevant. And,
> as [the Supreme Court] observed earlier this Term, "the
> Confrontation Clause guarantees an *opportunity* for effective
> cross-examination, not cross-examination that is effective in
> whatever way, and to whatever extent, the defense might wish."

*Id.* at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).
Thus, a state trial court has discretion to limit cross-examination. Moreover,
"[w]here it is merely the extent of cross-examination that is limited, the trial judge
retains a much wider latitude of discretion." *Dorsey v. Parke*, 872 F.2d 163, 167
(6th Cir. 1989).

> Where the trial court limits the extent of cross-examination, the inquiry for
> the reviewing court is "whether the jury had enough information, despite the
> limits placed on otherwise permitted cross-examination, to assess the defense
> theory." *Id.*

*Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006).

## 1. Cross-examination of Barbara Simon

The trial court interrupted defense counsel's cross-examination of Investigator Barbara

Simon by stating that defense counsel could not ask Ms. Simon to interpret Petitioner's custodial

statement. (Tr. Feb. 28, 2001, at 100-01, 104-05.) Defense counsel nevertheless was able to

question Simon about the manner in which she conducted the interview, and Petitioner's actual

statement was admitted in evidence. The state appellate court correctly observed that any error

in limiting defense counsel's cross-examination of Simon was harmless.

## 2. Cross-Examination of Hombre Foster

Defense counsel asked complainant Hombre Foster more than once about discrepancies

between Foster's testimony at the preliminary examination and at trial. The trial court

interrupted counsel's cross-examination by stating that defense counsel was arguing with the witness and repeating questions that had been asked and answered. The court said that the jury could decide whether Foster was changing his answer. (*Id*. at 178-79, 181-85.) Other than these limitations, defense counsel was not prevented from conducting a fairly lengthy cross-examination of Foster. (*Id*. at 173-96.)

### 3. Cross-Examination of Quentin Leapheart

The trial court prevented defense counsel from asking Quentin Leapheart about Hombre Foster's testimony. The trial court said that defense counsel could ask only what Leapheart did. (Tr. Mar. 1, 2001, at 51-52.) Later on, the trial court stated that defense counsel could not ask Leapheart why he was riding around with a gun and a lighter that looked like a gun in his car. (*Id*. at 59-60.) The trial court also interrupted defense counsel when counsel asked the same question more than once. (*Id*. at 62 and 63-65.) However, when the prosecutor asked a question more than once, the trial court overruled defense counsel's objection and said, "I don't think so." (*Id*. at 67-79.)

Despite these interruptions and the inconsistent ruling, the jury had enough information to assess the defense theory. Thus, the trial court's limitations on defense counsel's cross-examination of Leapheart and other prosecution witnesses did not violate Petitioner's right of confrontation. The state appellate court's conclusion -- that the trial court properly limited the cross-examination of Foster and Leapheart and that any errors in the limits placed on defense counsel during the cross-examination of Barbara Simon was harmless error -- did not result in a decision that was contrary to, or an unreasonable application of Supreme Court decisions on the right of confrontation.

18

### 4. Judicial Bias

Petitioner argues that the trial court's rulings and interruptions not only violated his right

of confrontation, but also amounted to judicial bias.

> [A] judge's misconduct at trial may be "characterized as bias or prejudice" only if
> "it is so extreme as to display clear inability to render fair judgment," so extreme
> in other words that it "display[s] a deep-seated favoritism or antagonism that
> would make fair judgment impossible." "[J]udicial remarks during the course of
> a trial that are critical or disapproving of, or even hostile to, counsel, the parties,
> or their cases ordinarily do not support a bias or partiality challenge . . . . [But]
> they will do so if they reveal such a high degree of favoritism or antagonism as to
> make fair judgment impossible." "[E]xpressions of impatience, dissatisfaction,
> annoyance, and even anger, that are within the bounds of what imperfect men and
> women . . . sometimes display," by contrast, do not establish such bias or
> partiality.

*Lyell v. Renico*, 470 F.3d 1177, 1186-87 (6th Cir. 2006) (internal citations omitted) (quoting

*Liteky v. United States*, 510 U.S. 540, 551, 555-56 (1994)).

While some of the trial court's rulings may have been unreasonable or inconsistent, the

trial court did not exhibit favoritism or antagonism to an extent that fair judgment was

impossible. There were a number of times when the trial court ruled in favor of defense counsel

and overruled the prosecutor's objections. (Tr. Mar. 1, 2001, at 49, 61-62, 66.) Thus, the state

court's rejection of Petitioner's claim did not result in a decision that was contrary to *Liteky*.

### D. The Trial Court's Ruling on Two Missing *Res Gestae* Witnesses

Petitioner's third claim alleges that he was deprived of a fair trial and his right to present

a defense when the trial court determined that the prosecution used due diligence to produce

Robert and Roberto Carter at trial. Petitioner asserts that the two *res gestae* witnesses could

have corroborated his claim of self-defense.

> [C]riminal defendants have the right to the government's assistance in compelling
> the attendance of favorable witnesses at trial and the right to put before a jury

evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987). Few rights are more fundamental than that of an accused to present witnesses in his own defense, see, *e.g., Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). Indeed, this right is an essential attribute of the adversary system itself.

. . . . To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon,* 418 U.S. 683, 709 (1974).

*Taylor v. Illinois*, 484 U.S. 400, 408-409 (1988). The lengths to which the prosecution must go to produce a witness is a question of reasonableness. *California v. Green*, 399 U.S. 149, 189 n. 22 (1970) (Harlan, J., concurring). A good-faith effort is necessary. *Id.*

As previously explained, the police made a diligent effort to locate and produce the Carter brothers. Therefore, the state court's conclusion that due diligence was used to produce the Carters was not contrary to, or an unreasonable application of, Supreme Court precedent.

### E. The Jury Instructions

Petitioner's fourth and fifth claims challenge the trial court's charge to the jury. Jury instructions must be considered as a whole and not in artificial isolation. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have violated a "right which was guaranteed to the defendant by the Fourteenth Amendment" or the instruction must have "so infected the entire trial that the resulting conviction violates due process." *Id.* at 146-47. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Dowling v. United States*, 493

20

U.S. 342, 352 (1990). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id*.

### 1. Order of Deliberations

Petitioner alleges that the trial court deprived him of a fair trial by not reading the standard instruction on the order of deliberations. The instruction directs jurors to consider the principal charge first and to consider a less serious offense only if they find that the defendant is not guilty of the principal charge or if they cannot agree on the principal charge. When defense counsel objected to the lack of an instruction on the order of deliberations, the trial court stated that it was not required to give the instruction. The Michigan Court of Appeals subsequently determined on the basis of *People v. Handley*, 415 Mich. 356; 329 N.W.2d 710 (1982), and *People v. Pollick*, 448 Mich. 376; 531 N.W.2d 159 (1995), that the trial court erred by not instructing on the order of deliberations.

Petitioner has not cited any Supreme Court decision that requires trial courts to instruct juries on the order of their deliberations, and the fact that the instruction may have been incorrect under state law is not a basis for habeas corpus relief. *McGuire*, 502 U.S. at 71-72. The lack of an instruction on the order of deliberations did not violate Petitioner's right to a fair trial because the trial court explained the possible verdicts on Count I (first-degree murder, second-degree murder, and not guilty), and did not instruct the jurors to acquit Petitioner of first-degree murder before they could consider second-degree murder or a verdict of not guilty.

### 2. The Instruction on Premeditation

Petitioner contends that the trial court improperly instructed the jurors on the element of premeditation. In Michigan, first-degree murder requires a finding that the defendant acted with

premeditation and deliberation.  *People v. Morrin*, 31 Mich. App. 301, 328 ; 187 N.W.2d 434, 448-49  (1971).

> The ordinary meaning of the terms will suffice.  To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.   [P]remeditation and deliberation characterize a thought process undisturbed by hot blood.  While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look."

*Id*., 31 Mich. App. at 329-30; 187 N.W.2d at 449 (footnotes omitted).

The trial court's initial instructions on premeditation and deliberation read:

> Premeditation means that a person has an opportunity not to do what they're going to do.

> You don't have to premeditate over a period of days or weeks, or even minutes, as long as the perpetrator has an opportunity to weigh what he is going to do, and he does it anyway.

> He thinks about it, has an opportunity for a second look, and he will go and then do the act anyway.

> So the elements are, an intent to kill, and it was done with deliberation and premeditation.  That is what is known as Murder in First Degree.

> It's an unlawful killing, it's an intentional killing, and it's done with premeditation and deliberation.

> Again, premeditation doesn't take a week or a month, or even 10 minutes. As long as the person intends to do something, he thinks about it, and has an opportunity to walk away and not do it.  That is known as premeditated murder.

(Tr. Mar. 1, 2001, at 151-52.)  The trial court explained that the difference between first-degree and second-degree murder was "whether a person premeditated and thought about it and had a chance not to do the act."  (*Id*. at 152-53.)

Later, while the jurors were deliberating Petitioner's case, they asked the trial court for

an explanation of premeditation.  The trial court responded by saying:

> Premeditation means a person thought about something before doing it and had an opportunity to say, "I'm not going to do it."
>
> It doesn't matter how long it was, as long as the person thought about and had an opportunity to say or for a second look to walk away, and committed the offense anyway.
>
> So, all premeditation means is what the word implies to think about something before hand and to do it anyway.  That's all it is.

(*Id*. at 163-64.)

Petitioner alleges that the language "had an opportunity to walk away" lessened the State's burden of proof on the element of premeditation.  He claims that the trial court should have included language indicating that "there must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill."  CJI2d 16.1(5).  Petitioner also claims that the trial court failed to instruct that premeditation is a thought process undisturbed by hot blood and involves reflection on a planned course of conduct fully measured and evaluating the consequences.

The Court believes that the jury instructions as a whole sufficiently explained the concept of premeditation.  In keeping with *Morrin*, the trial court explained that premeditation involves thinking about a course of action beforehand and having an opportunity to take a second look.

Although the trial court did not mention a thought process undisturbed by "hot blood" and did not define "deliberation," the court apparently provided the jurors with a copy of the standard jury instruction on premeditated murder.  *See McCoy*, 672 N.W.2d at 853 (Corrigan, J., concurring) and at 954 (Kelly, J., dissenting); *see also* Tr. Mar. 1, 2001, at 153 and 162.  Furthermore, the trial court orally explained that first-degree murder involves both premeditation

and deliberation and that the perpetrator must have an opportunity to weigh what he is going to do. The prosecutor also explained that, to be found guilty of first-degree murder, the person must have had an opportunity to consider the pros and cons of his actions. (Tr. Mar. 1, 2001, at 131 and 134.) Finally, as Michigan Supreme Court Justice Maura D. Corrigan recognized, "deliberation" is a concept that jurors can understand using their common sense.

The trial court's jury instruction on first-degree murder was adequate. The trial court distinguished first-degree murder from other homicides by noting that first-degree murder requires premeditation and deliberation. The instructions as a whole complied with constitutional principles. *See Lane v. Carlton*, 149 Fed. Appx. 374, *378-379, 2005 WL 2033326,at **4 (6th Cir. 2005) ("By so coupling the concept of premeditation with the deliberation necessary to distinguish first-degree murder from other homicides, the instruction complies with constitutional principles.").

### 3. Lesser-Included Offenses

Petitioner's final argument about the jury instructions is that the trial court refused to instruct on voluntary manslaughter, which is a lesser-included offense of murder. The United States Supreme Court has not decided whether due process requires the giving of jury instructions on lesser-included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). The Court of Appeals for the Sixth Circuit has concluded from *Beck* that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*)). "[F]ailure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice

24

or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby*, 894 F.2d at 797).

First-degree murder arguably is equivalent to a capital crime in Michigan because it is the State's most severe penalty. However, even assuming that Petitioner's claim is cognizable on habeas review, there is no substantive merit in the claim.

A defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)). *Mathews* is not controlling, however, if there is no basis on which to overcome the state court's factual findings that there was insufficient evidence to support the defendant's theory. *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001). In other words, "due process does not require an instruction on a lesser-included offense if the evidence does not support such an instruction." *Bowling v. Parker*, 344 F.3d 487, 500 (6th Cir. 2003) (citing *Hopper v. Evans*, 456 U.S. 605, 611 (1982)). A jury instruction on a lesser-included offense "is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater." *Campbell*, 260 F.3d at 541 (quoting *Evans*, 456 U.S. at 610).

In Michigan, to prove voluntary manslaughter,

> the prosecution must prove that: (1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions. *People v. Sullivan,* 231 Mich. App. 510, 518; 586 N.W.2d 578 (1998), aff'd equal division, 461 Mich. 992, 609 N.W.2d 193 (2000). The degree of provocation required to mitigate a killing from murder to manslaughter "is that which causes the defendant to act out of passion rather than reason." *Id.* In order for the provocation to be adequate it must be "that which would cause a reasonable person to lose control." *Id.* (emphasis deleted).

*People v. Tierney*, 266 Mich. App. 687, 714-715; 703 N.W.2d 204, 222-23 (2005).

Kenya Carter testified that she heard Petitioner say, "You talking shit," as he looked in the direction of the complainants. In addition, Petitioner told the police that he heard his friend Robert say that someone had a gun. However, the complainants testified that they did not shoot at Petitioner or point anything at him and that Petitioner did not say anything to them before running off and then returning with a gun and shooting at them. Petitioner himself admitted to the police that no one pointed a gun at him and that he fired at the complainants before he heard a single gunshot. Although there was one fired cartridge that did not match all the other fired cartridges at the scene of the shooting, a ballistics expert testified that he had no way of knowing how long that cartridge had been there.

The Michigan Court of Appeals correctly determined that the statement, "He's got a gun," was not sufficient provocation to justify a manslaughter instruction. The court of appeals also recognized that there was no evidence Petitioner knew the decedent was armed and no testimony regarding anyone shooting at Petitioner. The court of appeals concluded that Petitioner initiated the confrontation between himself and the victim and that the evidence did not support a jury instruction on voluntary manslaughter.

This Court agrees that the evidence did not support a finding of reasonable provocation. Therefore, the lack of a jury instruction on voluntary manslaughter did not deprive Petitioner of a defense for which sufficient evidence existed, and the state court's conclusion was not contrary to, or an unreasonable application of, *Matthews*.

### F. Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his first-degree murder

conviction in that the State failed to establish the element of premeditation. Petitioner asserts

that he acted on a sudden impulse when he heard that the complainants possessed a gun and that

the element of malice was negated by this provocation. In support of this allegation, Petitioner

points out that a .25 caliber gun and a toy gun were present in the complainants' car during the

shooting and that two types of casings were found at the scene of the shooting.

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on

review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a reasonable doubt.'
> Instead, the relevant question is whether, after viewing the evidence in the light
> most favorable to the prosecution, *any* rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted)

(emphasis in original). This "standard must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law," *id*. at 324 n.16, and through the

framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

In Michigan, jurors may convict a defendant of murder "only when they are convinced

beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2)

circumstances of justification, excuse or mitigation do not exist." *Morrin*, 31 Mich. App. at 323;

187 N.W.2d at 445. As previously explained, first-degree premeditated murder requires a

finding that the defendant acted with premeditation and deliberation. *Id.*, 31 Mich. App. at 328;

187 N.W.2d at 448-49.

Premeditation and deliberation may be proved by circumstantial evidence. *See People v. Herndon*, 246 Mich. App. 371, 415; 633 N.W.2d 376, 404 (2001). Factors that may be considered when determining whether the defendant premeditated and deliberated a murder are: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753, 757 (1998).

The Michigan Court of Appeals summarized the evidence as follows:

> [D]efendant had an antagonistic relationship with the decedent and his companions. Defendant left the area and returned armed. He conveyed his intent to shoot at the victims so that his companions could warn their friends, and then ran at the decedent's vehicle and fired numerous shots, seven of which struck the decedent and the other victim.

*McCoy*, 2003 WL 21995222, at *6.

Although Petitioner informed the police that he did not intend to kill anyone, he admitted to the police that he ran to his car, acquired an SK rifle, and returned to the area where the complainants were seated in a car. Then, despite the fact that people allegedly saw his rifle and began running, he fired several times at the complainants' car. (Tr. Feb. 28, 2001, at 93-94 & 96.) The surviving complainants admitted that there was a .25 caliber gun and a cigarette lighter in the shape of a gun in the car. However, they testified that the gun was not visible,[3] that they did not shoot at Petitioner or point anything at him, and that their car windows were up.

A rational trier of fact who viewed the evidence in a light most favorable to the

---

[3] One of the complainants said that the gun was in a book bag, and the other surviving complainant testified that Martel Wilson had the gun in the pocket of his jacket.

prosecution could have concluded that Petitioner was not provoked into shooting and that his conduct was not justified. He had time to subject his conduct to a "second look" and to think about what he was doing. Therefore, the state court's conclusion that the prosecution established the element of premeditation was not contrary to, or an unreasonable application of, *Jackson*.

### G.  Cumulative Effect of Errors

Petitioner contends that the cumulative effect of the trial errors deprived him of a fair trial in violation of his right to due process. This claim lacks merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's judgment was contrary to any Supreme Court decision so as to warrant habeas relief under 28 U.S.C. § 2254(d). *Id.* Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, __ U.S. __, 127 S. Ct. 557 (2006).

### H.  The Sentence

Petitioner challenges his sentence for assault with intent to commit murder on the ground that the trial court failed to provide an adequate reason for departing upward from the sentencing guidelines range. Petitioner argues in the alternative that, even if there were substantial and compelling reasons for departing from the sentencing guidelines, the life sentences imposed for his assault convictions violated the principle of proportionality.

The trial court found the sentencing guidelines of 126 to 210 months to be totally inadequate because Petitioner tried to kill three people and used an assault rifle, which had been altered so that it could be fired from a running position. The court opined that "others must be

discouraged from taking similar action." (Tr. Mar. 21, 2001, at 9-11.) The Michigan Court of

Appeals, however, agreed with Petitioner that his sentence was disproportionate in light of

Petitioner's background and lack of a criminal record, among other things. The Michigan

Supreme Court reversed the judgment of the court of appeals and reinstated the trial court's

judgment, but it did not address Petitioner's sentencing claim. Consequently, habeas review of

Petitioner's claim is *de novo*. *Higgins*, 470 F.3d at 630.

Petitioner relies on MICH. COMP. LAWS § 769.34(3), which requires state judges to

provide a substantial and compelling reason for departing from the sentencing guidelines. The

alleged violation of Michigan law is not a basis for habeas corpus relief. *Lewis v. Jeffers*, 497

U.S. 764, 780 (1990); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v.

Harris*, 465 U.S. 37, 41 (1984)).[4] "In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*McGuire*, 502 U.S. at 68.

Petitioner cites federal case law for the principle that punishment should be proportionate

to the offender and the crime. However, a plurality of the Supreme Court has held that the

Eighth Amendment to the United States Constitution contains no proportionality guarantee.

*Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Amendment "forbids only extreme

sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring)

(quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). In *Harmelin*, the Supreme Court upheld a

---

[4] Even if the sentences were disproportionate to the offender and the offense, Petitioner would not be entitled to relief under state law because he is serving a mandatory nonparolable sentence for his murder conviction, which was affirmed by the Michigan Supreme Court. *People v. Passeno,* 195 Mich. App. 91, 102; 489 N.W.2d 152, 158 (1992), *overruled on other grounds by People v. Bigelow*, 229 Mich. App. 218; 581 N.W.2d 744 (1998).

sentence of life imprisonment without the possibility of parole for simple possession of 672 grams of cocaine. If life imprisonment without the possibility of parole for the non-violent crime of possession of cocaine is constitutionally permissible, Petitioner's sentence of life imprisonment with the possibility of parole for a violent act surely is constitutional. "Indeed, the Supreme Court has never held unconstitutional a sentence less severe than life imprisonment without the possibility of parole." *Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002). The Court concludes that Petitioner's sentences for assault with intent to commit murder were not grossly disproportional or unconstitutional.

## IV. Conclusion

The state appellate courts' rejection of Claims I through VI, VII.A, VII.C, and VIII through XI did not result in decisions that were contrary to or an unreasonable application of Supreme Court precedent. Therefore, those claims are DISMISSED.

An evidentiary hearing will be held on Claims VII.B., VII.D., and VII.E., which allege that Petitioner's trial attorney (1) did not properly investigate or advance a claim of self defense, (2) interfered with Petitioner's right to testify, and (3) failed to file a motion to suppress Petitioner's statement to the police. The Court vacates its order denying Petitioner's motion for an evidentiary hearing [Dkt. 5, May 5, 2005] and the portion of a subsequent order [Dkt. 23, Aug. 21, 2006], which denied Petitioner's second motion for an evidentiary hearing.

Having appointed counsel for Petitioner, the Court DENIES Petitioner's renewed motion for discovery [Dkt. 33, Oct. 27, 2006]. The motion is denied without prejudice pending counsel's assessment of the need for discovery.

Dated: July 19, 2007

                                        S/George Caram Steeh

                                        31

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 19, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk